AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4343 Von Karman Ave, Suite 250
Newport Beach, CA 92660
Ph.:   949-260-1240
Fax:   949-260-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiffs, Individually
and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ARIFUR RAHMAN, an individual, CATHERINE HOSINO, an individual, KATHRYN ROHRER, an individual, JUAN GONZALEZ, an individual, RAYMOND PARET, an individual, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>   vs.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>            Defendants. | **CASE NO.: 8:20-cv-00654-DOC-KES**<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>HON. DAVID O. CARTER<br>United States District Judge<br><br>Hearing Date:  November 23, 2020<br>Hearing Time:  8:30 a.m.<br>Courtroom:    9D<br><br>Action Filed:  April 3, 2020<br>Trial Date:     TBD |

# **TABLE OF CONTENTS**

**I.     INTRODUCTION** ..................................................................................... **1**

**II.    SUMMARY OF FACTUAL ALLEGATIONS** ................................................. **2**

**III.   LEGAL STANDARD** ................................................................................ **3**

**IV.    PLAINTIFFS HAVE ARTICLE III STANDING** ........................................... **4**

    **A.     Plaintiffs Have Suffered an Injury-in-Fact.** ....................................... **5**

        **1.  The Substantial Risk of Identity Fraud or Identity Theft to Plaintiffs Constitutes an Injury-in-Fact** ................................................................. **5**

        **2.  The Invasion of Plaintiffs' Privacy is an Injury-in-Fact** ................... **9**

        **3.  Plaintiffs Allege Many Other Injuries Which Confer Standing.** ....... **11**

    **B.     Plaintiffs' Injuries Are Traceable to Marriott's Conduct.** .................... **13**

    **C.     Plaintiffs Have Standing to Pursue Injunctive Relief.** ......................... **13**

**V.     MARRIOTT'S RULE 12(B)6 MOTION SHOULD BE DENIED** ................. **14**

    **A.     Plaintiffs State a Valid Claim for Negligence.** .......................... **14**

        **1.  Plaintiffs Have Alleged Marriott Owed a Duty to Plaintiffs and That Marriott Breached Its Duty** ........................................................................ **14**

        **2.  The Economic Loss Doctrine Does Not Defeat Plaintiffs' Negligence Claim.** .................................................................................................. **16**

    **B.     Plaintiffs Have Sufficiently Alleged Valid Contract Claims.** ................. **18**

        **1.  Plaintiffs Have Alleged a Valid Breach of Contract Claim.** .............. **18**

        **2.  Plaintiffs Have Alleged a Valid Breach of Implied Contract Claim.** **19**

    **C.     Marriott's Motion to Dismiss Plaintiffs' UCL Claim Must Be Denied.** **21**

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

1.  Plaintiffs Have Statutory Standing Under the UCL. .........................21

2.  Plaintiffs Have Stated a Valid Claim for Violations of the UCL. ......22

(a) Plaintiffs State Sufficient Facts Under the Unlawful Prong...22

(b) Plaintiffs State Sufficient Facts Under the Unfair Prong.......22

(c) Plaintiffs State Sufficient Facts Under the Fraud Prong. .......23

D.   The Motion to Dismiss the Unjust Enrichment Claim Must Be
Denied..................................................................................................23

E.   Marriott's Motion to Dismiss the CCPA Claim Should Be Denied.......24

VI.   CONCLUSION .................................................................................25

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Facebook, Inc.*,
   424 F. Supp. 3d 686 (N.D. Cal. 2019) .............................................. 8, 13, 14

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................................. 11, 13, 22, 23

*Anderson v. Hannaford Bros. Co.*,
   659 F.3d 151 (1st Cir. 2011) ............................................................ 20

*In re Anthem Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................................. 12, 22, 23

*In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK,
   2016 WL 3029783 (N.D. Cal. May 17, 2016) ................................. 12, 21

*In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT,
   2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ................................... 20

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......................................... 12, 13, 15, 16

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) .......................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 4

*In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR,
   2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ................................... 20

*In Re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA)
   2020 WL 5629790 (E.D. Va. Sept. 18, 2020) ................................. 18, 22

*Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS,
   2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ............................... 20

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................ 6

iii

*In re: Cmty. Health Sys. Inc.*, No. 15-CV-222-KOB,
    2016 WL 4732630 (N.D. Ala. Sep. 12, 2016) ................................. 24

*Dieffenbach v. Barnes & Noble, Inc.*,
    887 F.3d 826 (7th Cir. 2018) ........................................................ 12

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ........................................................ 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ..................................................................... 4-5

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................................... 15, 18

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................... 10, 24

*In re Facebook Privacy Litig.*,
    572 Fed. Appx. 494 (9th Cir. 2014) ............................................. 12

*Fed. Nat'l Mortg. Assn. v. Bugna*,
    57 Cal. App. 4th 529 (1997) ........................................................ 19

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
    806 F.3d 125 (3d Cir. 2015) ........................................................ 10

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal 2012) ....................................... 23

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ................................................................. 17

*Krottner v. Starbucks Corporation*,
    628 F.3d 1139 (9th Cir. 2010) .................................................... 5, 6, 8

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ................................................................. 21

*In re LinkedIn User Privacy Litigation*, No. 12-cv-3088-EJD,
    2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ............................. 12, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................ 13

*In re Marriott Int'l. Inc., Customer Data Sec. Breach Litig.*,
   440 F. Supp. 3d 447 (D. Md. 2020) .................................... *passim*

*McKenzie v. Allconnect, Inc.*,
   369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................... 20

*McNeely v. Claremont Mgmt. Co.*,
   210 Cal. App. 2d 749 (1962) ........................................... 19

*In re Michaels Stores Pin Pad Litig.*,
   830 F.Supp.2d 518 (N.D. Ill. 2011) .................................. 20

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ........................................... 16

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................ 13

*Pacific Bay Recovery, Inc. v. California Physicians' Servs., Inc.*,
   12 Cal. App. 5th 200 (2017) ............................................ 20

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ........................................... 4

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) .................................... 5, 9, 10

*In re Premera Blue Cross Cust. Data Sec. Breach Litig.*,
   198 F. Supp. 3d 1183 (D. Or. Aug. 1, 2016) .................... 24

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ........................................ 9, 13

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ........................................... 16, 17, 18

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

*Rudolph v. Hudson's Bay Co.,* No. 18-CV-8472 (PKC),
    2019 WL 2023713 (S.D.N.Y. May 7, 2019) .................................... 20, 24

*Sackin v. TransPerfect Glob., Inc.,*
    278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) ...................................... 20

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ......................................................... 4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986) ......................................................... 25

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* No. 3:19-CV-2284-H-KSC,
    2020 WL 2214152 (S.D. Cal. May 7, 2020) .................................. *passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................. 15

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................. 4, 9

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ......................................................... 4

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ......................................................... 4

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ......................................................................... 5

*Svenson v. Google, Inc.,* No. 13–cv–04080–BLF,
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .................................. 12

*In re Target Corp. Data Sec. Breach Litig.,*
    66 F. Supp. 3d 1154 (D. Minn. 2014)............................................. 20, 24

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,* No. CV143466MMMJPRX,
    2015 WL 12746208 (C.D. Cal. Oct. 30, 2015) ............................... 18

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

*United States v. City of Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ........................................................ 4

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ...................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 15

*Walters v. Kimpton Hotel & Rest. Grp., LLC*, No. 16-CV-05387-VC,
   2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) .............................. 20

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................ 10

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................ 23

*Witriol v. LexisNexis Group*, No. C05-02392-MJJ,
   2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) .............................. 15

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) ......................................................... 4

*In re Yahoo! Inc. Customer Data Sec. Breach Litigation*, No. 16-MD-02752-LHK,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................... 12, 13, 14, 22

*In re Yahoo! Inc. Customer Data Sec. Breach Litigation*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2019) .......................... 12, 17, 18, 21

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ............................................. *passim*


**<u>Federal Rules</u>**

Fed. R. Civ. P. 8 ................................................................... 15, 24

Fed. R. Civ. P. 9 ................................................................... 15, 16

Fed. R. Civ. P. 12 .................................................................... 3, 4

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

Fed. R. Civ. P. 15 ....................................................................... 25

**Statutes**

15 U.S.C. § 45 ........................................................................... 22

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................... 3

Cal. Civ. Code § 1621 ............................................................... 20

Cal. Civ. Code § 1654 ............................................................... 19

Cal. Civ. Code § 1668 ............................................................... 19

Cal. Civ. Code § 1782 ............................................................... 25

Cal. Civ. Code § 1798.81.5 .................................................. 15, 22, 25

Cal. Civ. Code § 1798.150 .................................................. 3, 25, 22

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

# I.   INTRODUCTION

This class action arises out of a massive cybersecurity breach compromising the highly sensitive personal and confidential information of over 5 million consumers who entrusted their data to Marriott International, Inc. ("Marriott").  Marriott failed to prevent this incident by implementing and maintaining adequate security systems, instituting basic cybersecurity policies and procedures, and adequately training employees and franchisees on such policies and procedures.  Plaintiffs Arifur Rahman, Catherine Hosino, Kathryn Rohrer, Juan Gonzalez, and Raymond Paret ("Plaintiffs") are confirmed victims of the breach. Marriott directly admitted to each of them that their personal details had been accessed without their consent.  Despite all of this, Marriott contends that it did nothing wrong and that Plaintiffs have suffered no cognizable harm.  Based solely on its bald assurances in their Motion, Marriott urges the Court to improperly resolve factual disputes.

As explained below, Plaintiffs have both Article III and statutory standing to pursue their claims under applicable Ninth Circuit authority and leading district court cases. Marriott's arguments ignore the unmistakable explosion of cybercriminal exploitation of consumers' personal data to commit not only financial crimes, identity fraud, and identity theft, but also the vicious and humiliating forms of harassment, bullying, and other harm enabled by data breaches like the one in this case.  Marriott also ignores the continually growing body of case law demonstrating that data security breaches are legally actionable and are serious violations of the law with enormous human consequences, for which companies like Marriott that hold and profit from the data should be held liable.

Plaintiffs have also adequately alleged Marriott's wrongdoing, along with the right to recover damages under theories that have been widely approved by courts deciding data breach class actions.  They have also alleged a valid basis to pursue contract claims based on Marriott's written privacy policies, and on an implied contract that consumers who share data with Marriott for hotel and rewards program transactions only do so under the expectation that Marriott will safeguard that data.

For these reasons and those stated below, Marriott's motion should be denied.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Marriott is a multinational company that manages and franchises a broad portfolio of hotels and related lodging facilities globally.  [Dkt. 10, First Amended Complaint ("FAC"), ¶13.]  Guests making reservations at Marriott hotels and creating an account to become a member of Marriott's customer loyalty program ("Marriott Bonvoy") share a wealth of personal information with Marriott, including names, addresses, phone numbers, e-mail addresses, gender, date of birth, and in some instances, payment card information, passport numbers, and loyalty numbers of Marriott partners (e.g., airlines) ("Personal Information").  [FAC, ¶14.]  This data resides on Marriott's databases, from which Marriott derives numerous benefits, including earning money from selling the data to third parties and using the data to enhance their marketing efforts.  [FAC, ¶¶14, 24, 26, 28.]

Personal Information provided to Marriott by customers is governed by Marriott's Global Privacy Statement, which provides information and assurances to customers about "how we [Marriott] collect, use and disclose data."  [FAC, ¶15.]  As detailed in the FAC, the Global Privacy Statement describes the persons with whom Personal Information is shared and who are thus authorized to receive the information.  [FAC, ¶¶15-21.]  In a section entitled "Security," Marriott Group claims that "[w]e seek to use reasonable organizational, technical and administrative measures to protect Personal Data."  [FAC, ¶19.]  Marriott also published a statement specific to California residents on its website, entitled the "California Consumer Privacy Statement," which provides "additional details" concerning "the categories of Personal Information about California residents that we have collected or disclosed within the preceding 12 months[.]"  [FAC, ¶¶22-27.]  As a corollary, were any Personal Information to be accessed by persons outside the universe of those specified by Marriott, those persons are plainly not authorized to receive such information. [FAC, ¶¶99.]  Notably, nothing in Marriott's Global Privacy Statement or California Consumer Privacy Statement tells customers that it discloses Personal Information to hackers, cybercriminals, or other unauthorized third persons.  [FAC, ¶¶21, 27.]

Plaintiffs and the class members provided their Personal Information to Marriott

2

with the expectation and understanding that Marriott would adequately protect and store their data.  [FAC, ¶29.]  If they had known that Marriott's data security was insufficient to protect their Personal Information, they would not have entrusted their Personal Information to Marriott and would not have been willing to pay for, or pay as much for, hotel reservations at Marriott properties and other amenities.  [*Id.*]

On March 31, 2020, Marriott admitted to the data breach.  [FAC, ¶30.]  In the announcement, Marriott stated that at the end of February 2020, it "identified that an unexpected amount of guest information may have been accessed using the login credentials of two employees at a franchise property" and that it believed this activity started in mid-January 2020.  [*Id.*]  Marriott admitted Personal Information, such as names, addresses, phone numbers, e-mail addresses, birthday day and month, gender, and loyalty account numbers were accessed by unauthorized persons.  [FAC, ¶¶1, 30-31, 36, 38-39.]

Consumers impacted by the breach, including Plaintiffs, received e-mails from a Marriott executive admitting to the breach and purporting to apologize.  [FAC, ¶36.]  Each of the named Plaintiffs received individual messages directly from the "Privacy Team" at the "Marriott Privacy Center" admitting to the breach and confirming they are victims whose Personal Information was compromised.  [FAC, ¶¶38-39.]

This catastrophic data security and privacy lapse was the result of Marriott's failure to implement and maintain reasonable and adequate security systems, institute basic cybersecurity policies and procedures, and adequately train employees and franchisees on such policies and procedures.  [FAC, ¶¶1, 68, 73.]  Plaintiffs sue Marriott on behalf of a putative class of California residents for negligence, violation of the California Consumer Privacy Act (Cal. Civ. Code § 1798.150) ("CCPA"), breach of contract, breach of implied contract, violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL"), and unjust enrichment.  Plaintiffs seek damages and restitution under a variety of theories, discussed below, along with injunctive relief.

## III.  LEGAL STANDARD

To defeat a Rule 12(b)(1) challenge to Article III standing, Plaintiffs need only

demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Where, as here, a defendant only raises a facial challenge to standing—i.e., "that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)—the Court must consider Plaintiffs' allegations "to be true and draw all reasonable inferences in [Plaintiffs'] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Dismissal is proper under Rule 12(b)(6) "only under extraordinary circumstances." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). The Complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The motion should be denied where the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "if there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.   PLAINTIFFS HAVE ARTICLE III STANDING

Marriott asserts that the Article III standing doctrine shields it from legal responsibility for the unauthorized access and disclosure of Plaintiffs'—and millions of other consumers'—sensitive data. To defeat a challenge to Article III standing, Plaintiffs need only demonstrate that (1) they suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is "fairly traceable to the challenged action of the defendant," and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Friends of the Earth, Inc.*

4

*v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  Marriott challenges only the "injury-in-fact" and traceability elements.  Its arguments are without merit.

### A.   Plaintiffs Have Suffered an Injury-in-Fact.

As noted above, to establish Article III standing, a plaintiff must demonstrate he or she has suffered an "injury in fact" that is "concrete and particularized" and is "actual or imminent, and not conjectural or hypothetical." *Zappos*, 888 F.3d at 1024.  "A concrete injury need not be tangible." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) ("[A]n intangible harm may qualify as an injury in fact.").  "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Zappos,* 888 F.3d at 1024 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)) (quotation omitted).

In this case, Plaintiffs have suffered injury in fact based on (1) the substantial risk to them of identity fraud and identity theft, (2) the invasion of privacy in their personal information, and (3) the economic and other losses they have suffered.  These three bases for injury in fact are discussed, in turn, below.

### 1.   The Substantial Risk of Identity Fraud or Identity Theft to Plaintiffs Constitutes an Injury-in-Fact.

It is well-settled in the Ninth Circuit that a plaintiff sufficiently alleges an injury in fact based on an allegation of a substantial risk that hackers or other wrongdoers "will commit identity fraud or identity theft." *Zappos*, 888 F.3d at 1029; *Krottner v. Starbucks Corporation*, 628 F.3d 1139, 1142-43 (9th Cir. 2010).  That is exactly what Plaintiffs have alleged here.  [*See* FAC, ¶¶41-42, 45, 54, 75, 121.]

In *Krottner,* a thief stole a laptop containing "the unencrypted names, addresses, and social security numbers of approximately 97,000 Starbucks employees."  628 F.3d at 1140.  Starbucks sent a letter to affected employees "alerting them to the theft and stating that [it] had no indication that the private information ha[d] been misused."  *Id.* at 1140-41.  The Court nevertheless held that a credible threat of real and immediate harm had been sufficiently alleged because the information was sensitive and had been stolen.  *Id.*

at 1143.  The Court concluded that "an increased risk of future identity theft [was] . . . sufficient to confer standing on plaintiffs."  *Id.* at 1142.  In other words, "threatened injury constitutes injury in fact" for standing purposes.  *Id.* (internal quotations omitted).

Eight years later, the Ninth Circuit reaffirmed *Krottner* in *Zappos*, holding that *Krottner* remains good law even after the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).  *Zappos*, 888 F.3d at 1025-26.  In *Zappos*, the plaintiffs alleged that hackers breached the defendant's servers and stole names, account numbers, passwords, email addresses, billing and shipping addresses, and payment card information of more than 24 million customers.  *Id.* at 1023.  A subset of the plaintiffs asserted claims based solely on the premise that the breach "put them at risk of identity theft."  *Id.*  Instead, they alleged they "may not see the full extent of the identity theft or fraud for years" and "it may take some time for the victim to become aware of the theft."  *Id.* at 1028-29.  The district court dismissed these plaintiffs' claims for lack of Article III standing.

The Ninth Circuit *reversed*.  The Court held "that, under *Krottner,* Plaintiffs have sufficiently alleged standing *based on the risk of identity theft*."  *Id.* at 1023 (emphasis added).  The Court reasoned the plaintiffs alleged "that the type of information accessed in the breach can be used to commit identity theft, including by placing them at higher risk of 'phishing' and 'pharming,' which are ways for hackers to exploit information they already have to get even more PII [personally identifiable information]."  *Id.* at 1027.  The Court held:  "[a]ssessing the sum of their allegations in light of *Krottner*, Plaintiffs have sufficiently alleged an injury in fact based on a substantial risk that the Zappos hackers will commit identity fraud or identity theft."  *Id.* at 1029.

Here, Plaintiffs also have Article III standing based on a substantial risk of identity fraud or identity theft under *Krottner* and *Zappos*.  Marriott communicated directly with each Plaintiff to inform them that their Personal Information was involved in a data breach.  Marriott wrote to Plaintiffs in an e-mail that "[w]e are writing to let you know that some of your information may have been accessed *without authorization*. *We are sorry that this occurred* . . ."  [FAC, ¶36 (emphasis added).]  The company told Plaintiffs that the

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

information involved in the breach included the name, mailing address, e-mail address, phone number, gender, birthday day and month, and in some cases, loyalty account number, linked airline loyalty programs and account numbers, and stay/room preferences. [FAC, ¶¶31, 38-39.]  Marriott's failure to keep this information secure has severe ramifications.  [FAC, ¶41.]  Given the sensitive nature of the Personal Information accessed without authorization, "hackers have the ability to commit identity theft and other identity-related fraud against Plaintiffs and class members now and into the indefinite future." [*Id.*]  Plaintiffs also allege the Personal Information that was exposed "is highly coveted and valuable on underground or black markets" on the "dark web." [FAC, ¶42.].

Moreover, Plaintiffs include extraordinarily detailed allegations, with citations to scholarly and other articles, explaining the value of the personal information accessed without authorization to wrongdoers on the web, the threat of identity theft and identity fraud to victims of a data breach like the one in this case, and the significant harm and consequences that flow from the failure of a company to secure its customers' data.  [*See* FAC, ¶¶43-52.]  Plaintiffs allege that as a result of the data breach, they "have suffered or will suffer economic loss and other actual harm." [FAC, ¶54.]  This includes the harm from "identity theft and fraud resulting from theft of their Personal Information[,]" "the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being in the possession of one or more unauthorized third parties[,]" and "placing Plaintiffs and members of the Class at higher risk of 'phishing' and 'pharming' operations, cyberbullying, and of cybercriminal operations conducted for the purpose of online or in-person extortion, embarrassment, stalking, blackmail, or other harassment." [*Id.*]  These allegations are more than sufficient to allege injury in fact on the basis of a "substantial risk" that hackers or other unauthorized third persons "will commit identity fraud or identity theft." *Zappos*, 888 F.3d at 1029.

Marriott's argument that the purported absence of social security numbers, payment card information, or driver's license numbers having been stolen requires the Court to find there is no Article III standing, is completely without merit.  As an initial matter, we do

not know this to be the case.  Marriott admitted in its notification to affected customers that its investigation is "ongoing."  [FAC, ¶33.]  The possibility that such information belonging to Plaintiffs has been compromised cannot, therefore, be ruled out at this stage.

But moreover, neither *Krottner* nor *Zappos* laid down any bright-line rules mandating that only those data thefts involving particular categories of information qualify for Article III standing.  To the contrary, the cases focus only on whether there is a risk of identity theft.  Whether the information compromised creates that risk is a question of fact requiring discovery and expert opinion, and thus cannot be resolved at this stage.

The district court's decision in *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019), demonstrates why Marriott is wrong.  There, the plaintiff filed a class action asserting a claim for negligence based on a data breach arising out of Facebook's alleged faulty security practices, which allowed hackers to break into Facebook's platform and obtain the personal information of users.  Like this case, "*[n]o social security or credit-card numbers were taken in [the] hack*.  The hackers took plaintiff's name, date of birth, phone number, gender, and hometown, among other information."  *Id.* at 691 (emphasis added).  Despite these facts, the court nevertheless found, both at the pleading stage and class certification, that the plaintiff had Article III standing to pursue his claim.

The court reasoned that the plaintiff's "identity remains at peril, theft-wise. That is enough."  *Id.*  The court pointed out that "[a] finding of a substantial risk of identity theft does not depend on concrete examples that the stolen information has already been misused."  *Id.*  It found significant that the information taken—e.g., date of birth, gender, and hometown—"remain[s] with the victim forever, thereby 'g[i]v[ing] hackers the means to commit fraud or identity theft.'"  *Id.* at 691 (quoting *Zappos*, 888 F.3d at 1027-29).  Thus, such information "will never go bad, and so, hackers can warehouse this stolen data for years before using it.  The substantial risk remains."  *Id.*

The court also found its ruling was consistent with *Zappos*, finding that the plaintiff had standing even in the absence of "concrete examples of identity theft and specific instances of hacked accounts[.]"  *Id.*  The court explained that *Zappos* itself "recognized

that '[a] person whose [personal information] has been obtained and compromised may not see the full extent of identity theft or identity fraud for years.  And it may take some time for the victim to become aware of the theft.'"  *Id.* at 691-92 (quoting *Zappos*, 888 F.3d at 1028-29); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Neiman Marcus customers should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing.").

Similarly, here, Marriott admitted directly to Plaintiffs that unauthorized persons accessed their names, genders, birthdays, phone numbers, addresses, e-mail addresses, account numbers, and other information.  This information in combination may enable data thieves and other wrongdoers achieve their sinister goals.  It may be used, for example, to conduct "phishing" and "pharming" operations to obtain other useful information, to conduct cyberbullying or cyberstalking operations, to physically stalk or harass individuals in their homes by using the address information obtained in the breach, or to enable credit card fraud by completing an otherwise incomplete profile of an individual by matching the information obtained in the data breach with other information already in the possession of cybercriminals.  At this stage, the Court cannot justly conclude as a matter of law that the personal data disclosed to unauthorized persons is incapable of causing a cognizable injury to Plaintiffs.

### 2.      The Invasion of Plaintiffs' Privacy Is an Injury-in-Fact.

Plaintiffs also have Article III standing to pursue their claims against Marriott based on the harm suffered to their fundamental rights of privacy.  Whether by statute or common law, "[p]rivacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'"  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271 (9th Cir. 2019) (quoting *Spokeo,* 136 S. Ct. at 1549).  "Technological advances provide access to a category of information otherwise unknowable and implicate privacy concerns in a manner as different from traditional intrusions as a ride on horseback is different from a flight to the moon."  *Id.* at 1273 (citations and quotations omitted).

Accordingly, "the Ninth Circuit has repeatedly explained that intangible privacy

injuries can be redressed in the federal courts." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). For example, in *Patel*, the Ninth Circuit held that Facebook's alleged use of facial recognition technology to collect, use, and store face templates harmed the plaintiffs' privacy interests and thus conferred Article III standing on the plaintiffs. 932 F.3d at 1273-75. The Court thus rejected the argument that the plaintiffs' complaint merely described a bare procedural violation of the statute at issue. *Id.* at 1271; *see also Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1041-43 (9th Cir. 2017) (violation of statutory prohibition on calling or texting consumer without consent conferred Article III standing based on right to privacy).

The district court's ruling in *Facebook Consumer Privacy* is instructive. There, the court found that the plaintiffs' alleged injury—described as their "sensitive information" being "disseminated to third parties in violation of their privacy—is sufficient to confer standing." 402 F. Supp. 3d at 784. In reaching this conclusion, the court explained that it is "black-letter law that an injury need not be 'tangible' to be cognizable in federal court." *Id.* "[C]ourts have often held that this particular type of intangible injury – disclosure of sensitive private information, even without further consequence – gives rise to Article III standing." *Id.* As the court aptly observed, "[t]o say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious enough to warrant the attention of the federal courts is to disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it." *Id.* at 786; *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (allowing lawsuit asserting claims based on collection and disclosure of users' data to proceed despite the absence of any alleged economic injury); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 134-35 (3d Cir. 2015) (plaintiffs had standing based on the defendants' implanting tracking cookies on computers, explaining that "[f]or purposes of injury in fact, the defendants' emphasis on economic loss is misplaced.").

Here, Marriott failed to secure Plaintiffs' Personal Information. Marriott's "Privacy Team" at the "Marriott Privacy Center" communicated to Plaintiffs that it allowed this

personal information to be accessed by unauthorized third parties.  [FAC, ¶38.]  This was a violation of Plaintiffs' right to privacy.   [FAC, ¶¶1, 75, 86, 103, 111, 121, 131.] Marriott's conduct was also inconsistent with its "Global Privacy Statement."  [FAC, ¶¶15-27.]  Marriott's alleged violation of Plaintiffs' substantive privacy rights, therefore, creates Article III standing for Plaintiffs.

### 3.    Plaintiffs Allege Many Other Injuries Which Confer Standing.

Plaintiffs have sufficiently alleged they are entitled to recover damages under various theories, any one of which also establish Plaintiffs have standing.  [*See, e.g.*, FAC, ¶¶54, 56.]  The damages sought are supported by court decisions in data breach cases.

*First*, Plaintiffs seek to recover benefit of the bargain damages and/or restitution. [FAC, ¶¶54, 56, 75, 103, 111, 121.]  They allege that had they known the truth about Marriott's data security practices—that Marriott would not adequately protect and store their data—they would not have entrusted their Personal Information to Marriott, created a Marriott Bonvoy account, and would not have been willing to pay for, or pay as much for, hotel stays at Marriott.  [FAC, ¶56.]  As such, Plaintiffs and class members did not receive the benefit of their bargain with Marriott because they paid for a value of services, either through Personal Information or a combination of their Personal Information and money, they expected but did not receive.  [*Id.*]

Courts in major data breach class actions have found such damages to be recoverable.  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (finding the plaintiffs adequately pled injury where they alleged "they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing."); *see also In re Marriott Int'l. Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 492 (D. Md. 2020) ("*Marriott MDL*") ("Plaintiffs allege that 'had consumers known the truth about Defendants' data security practices—that they did not adequately protect and store their data—they would not have stayed at a Marriott Property, purchased products or services at a Marriott Property, and/or would have paid less.' . . . This is sufficient to establish

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

standing for the UCL claim."); *In re Yahoo! Inc. Customer Data Sec. Breach Litigation*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2019) ("*Yahoo! II*"); *In re Anthem Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) ("*Anthem I*"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *9 (S.D. Cal. May 7, 2020); *In re LinkedIn User Privacy Litigation*, No. 12-cv-3088-EJD, 2014 WL 1323713, at *4 (N.D. Cal. Mar. 28, 2014).

*Second*, Plaintiffs also seek damages for the loss or diminishment in value of their personal information as a result of the breach of privacy and loss of confidentiality in the information. [FAC, ¶¶54, 75, 128.] This theory of recovery is also supported by the law. *See In re Facebook Privacy Litig.*, 572 Fed. Appx. 494 (9th Cir. 2014) (that the plaintiffs "were harmed by the dissemination of their personal information and by losing the sales value of that information" were sufficient to allege damages and district court thus erred in dismissing claims); No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) ("*Yahoo! I*") (agreeing with the plaintiffs that "the Data Breaches caused all Plaintiffs to suffer a loss of value of their PII as a result of the Data Breaches"); *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) ("*Anthem II*") ("[T]he Ninth Circuit and a number of district courts have approved" allegations of damages arising from the loss of value of personal information); *Svenson v. Google, Inc.*, No. 13–cv–04080–BLF, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) ("Svenson's allegations of diminution in value of her personal information are sufficient to show contract damages for pleading purposes."). Marriott, which admits to selling personal data of its consumers, cannot credibly contend that Plaintiffs' data has no market value. [FAC, ¶¶26, 98.]

*Third*, Plaintiffs' claim for damages for lost time addressing and responding to the data breach [FAC, ¶¶54, 75] establishes injury-in-fact. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1035 (N.D. Cal. 2019) (citing *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018)).

*Finally*, damages asserted for money spent to mitigate their risk of identity theft are

also recoverable.  *See Yahoo! I*, 2017 WL 3727318, at *16 ("[A]llegations of out-of-pocket mitigation expenses" for credit monitoring services "are also sufficient to allege injury in fact"); *Adobe*, 66 F. Supp. 3d at 1216 (costs incurred to mitigate future identity theft sufficient to constitute injury in fact).

**B.    Plaintiffs' Injuries Are Traceable to Marriott's Conduct.**

Marriott next contends that Plaintiffs have not pled that any of their injuries are "fairly traceable to the challenged action."  [Motion at 11:10-11.]  This argument ignores Marriott's own admissions in direct written communications to Plaintiffs and the putative class members that *Marriott itself* allowed their personal information to be accessed by unauthorized persons.  [FAC, ¶¶36, 38-39.]  In other words, Marriott failed to prevent the breach.  This is sufficient to establish the traceability requirement.  *See Zappos, 888 F.3d at 1029* ("Plaintiffs sufficiently allege that the risk of future harm is "'fairly traceable' to the conduct being challenged'—here, Zappos's failure to prevent the breach."); *Remijas*, 794 F.3d at 696 (concluding it was enough for traceability that "Neiman Marcus admitted that 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk."); *Bass,* 394 F. Supp. 3d at 1033 & 1036 (finding the plaintiff Adkins "traces the plausibly alleged harms to the purported mishandling of [his] personal information" based on Facebook's notification to him that he had been subject to the data breach); *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.")

**C.    Plaintiffs Have Standing to Pursue Injunctive Relief.**

To establish standing for prospective injunctive relief, a plaintiff must demonstrate that he or she "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he [or she] will again be wronged in a similar way."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "As to the second inquiry, [a plaintiff] must establish a 'real and immediate threat of repeated injury.'"  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

In *Adkins*, the district court rejected the defendant's argument that the plaintiff had

no standing to seek injunctive relief "because Facebook has fixed the bug that caused the data breach." *Adkins,* 424 F. Supp. 3d at 698.  Instead, it found that "Facebook's repetitive losses of users' privacy supplies a long-term need for supervision, at least at the Rule 23 stage.  At this stage, there is a likelihood of future harm to warrant potential relief." *Id.*; *see also Yahoo! I*, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017) (rejecting the defendants' argument that the plaintiffs merely sought relief for a "past wrong" because the "Plaintiffs cannot trust Defendants' representations regarding their security systems" and  they "have not only failed to take any actions with regard to th[eir] information being on the dark web, but . . . have continued to dispute the scope of their responsibility.").

Similarly, here, there is a real and immediate threat of repeated injury.  Marriott's contention that the problem has been addressed and fixed is simply not credible to Plaintiffs—and, indeed, is a claim that needs to be tested in discovery.  Marriott incredibly contends that Plaintiffs have nothing to fear when it was Marriott that permitted this data breach to occur despite the fact that it is responsible for a gigantic data breach of epic proportions announced in November 2018, wherein the personal information of over **380 million guests** was exposed due to a flaw in its reservation and database systems.  *Marriott MDL*, 440 F. Supp. 3d at 454.  Moreover, as demonstrated by its Motion, Marriott plainly does not appear to be taking this breach seriously, as it clearly does not believe it has done anything wrong—let alone admit the scope of their responsibility.  For all of these reasons, there continues to be a real and immediate threat of injury that can only be remedied by injunctive relief.  Plaintiffs, therefore, should be permitted to pursue injunctive relief as set forth in the FAC.  [*See* FAC, ¶¶87, 122, Prayer.]

## V.   MARRIOTT'S RULE 12(B)(6) MOTION SHOULD BE DENIED

### A.   Plaintiffs State a Valid Claim for Negligence.

#### 1.   Plaintiffs Have Alleged Marriott Owed a Duty to Plaintiffs and That Marriott Breached Its Duty.

Marriott contends Plaintiffs' negligence claim should be dismissed because they do not plausibly allege duty or breach, or allege damages.  Marriott is incorrect.

*First*, there is no serious dispute that Marriott owed a duty to Plaintiffs to safeguard

14

their personal and private data.  The "legal duty to safeguard a consumer's confidential information entrusted to a commercial entity" is "well supported by both common sense and California" law.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014); *see also Bass,* 394 F. Supp. 3d at 1039 (rejecting Facebook's argument that it owed no duty of care in handling personal information); *Witriol v. LexisNexis Group*, No. C05-02392-MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (finding the defendants owed a duty "[a]s custodians of . . . Class Members' personal and confidential information"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019).

In addition, California has specifically informed businesses that if they have or use a California resident's personal information, they "shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."  Cal. Civ. Code §1798.81.5(b).  Marriott thus owes a duty to Plaintiffs under the negligence per se doctrine.

Marriott complains that Plaintiffs have not pled their negligence claim with sufficient particularity to describe how Marriott specifically breached its duty.  However, it is fundamental that Plaintiffs need not plead their negligence claim with specificity. Their claim is not governed by Rule 8, not Rule 9(b), which simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.").  Moreover, Marriott *ignores* the detailed allegations of the FAC establishing Marriott's duty, and breach of its duty as set forth in paragraphs 1, and 67 through 74 of the FAC.

In sum, Marriott was negligent because it failed to prevent this incident by implementing and maintaining reasonable and adequate security systems, instituting basic cybersecurity policies and procedures, and adequately training employees and franchisees

on such policies and procedures.  [FAC, ¶¶1, 68.]  Marriott should have protected its guests' data, especially given its past data privacy transgressions.  Marriott itself admitted that "an *unexpected* amount of guest information may have been accessed using the login credentials of two employees at a franchise property." [FAC, ¶30 (emphasis added).]  This breach affected an astounding sum of *5.2 million guests*, who were personally notified that their data was compromised.  [FAC, ¶¶30, 36, 38-39.]  These allegations are more than sufficient to provide notice to Marriott of the claims being asserted against it.  Marriott's demand for even more detail is a thinly disguised effort to persuade the Court to prematurely resolve factual and evidentiary disputes.  And in any event, Plaintiffs are not required to lay out all of the minutiae of how Marriott specifically failed to comply with its duty of care when those details are within Marriott's knowledge.  *Cf. Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge.").

*Second*, Marriott's argument that Plaintiffs have not plausibly alleged damages should also be rejected.  As explained in section IV(A)(3), *supra,* Plaintiffs have plausibly alleged they are entitled to recover damages under a variety of legally valid theories.

## 2.    The Economic Loss Doctrine Does Not Defeat Plaintiffs' Negligence Claim.

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  The purpose of this rule is to stop contract and tort law "from dissolving one into the other." *Id.* at 273.  The rule serves to "limit liability in commercial activities that negligently or inadvertently go away." *Id.* at 274 n.7

The doctrine is limited to allegations of "pure economic loss"; it does not apply to other types of alleged harm, such as "loss of time." *Bass*, 394 F. Supp. 3d at 1039; *Solara*, 2020 WL 2214152, at *4 (rule not applicable where the plaintiffs alleged they "lost time responding to the Breach as well as suffer[ed] from increased anxiety").

Here, Plaintiffs have suffered more than pure economic losses.  They also allege

16

lost time spent addressing and responding to the data breach, and attempting to mitigate the future consequences of breach.  [*See* FAC, ¶¶54, 75.]  They also allege loss in the value of their data, which is a damage to their property.  [FAC, ¶¶54, 75.]  *Robinson Helicopter,* 34 Cal.4th at 988 ("Economic loss" under the rule excludes "claim of personal injury or *damages to other property*.") (emphasis added).  Further, they allege "stress, nuisance, and annoyance of dealing with repercussions of the data breach."  [FAC, ¶54.]  "Since Plaintiffs have pled non-economic losses, the Court need not consider the remaining two exceptions to the economic loss doctrine."  *Solara*, 2020 WL 2214152, at *4.

One of those exceptions is the existence of a "special relationship" between the parties.  *Yahoo! II*, 313 F. Supp. 3d at 1131.  Courts consider six factors in determining whether such a special relationship exists:  (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.  *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).

Here, the above-listed factors weigh in favor of finding that a special relationship exists between Plaintiffs and Marriott.  [*See* FAC, ¶71.]  The transactions entered into between Plaintiffs and Marriott were for hotel stays and creation of a loyalty rewards program account, and thus were supposed to benefit Plaintiffs in some fashion.  Plaintiffs provided their Personal Information with the expectation that Marriott would protect their data and inform them of any misappropriation of that data.  It was plainly foreseeable Plaintiffs would suffer injury if Marriott did not adequately protect this data.  There is a sufficiently close connection between Marriott's conduct and Plaintiffs' alleged injury that is traceable to, and a result of, Marriott's inadequate security.  Moreover, there is "moral blame" ascribable to Marriott's conduct because it allegedly knew that its data security program was inadequate, but failed to prevent the unauthorized disclosure of its guests' personal information.  Finally, "[r]ecognizing a cognizable claim furthers the policy of

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

preventing future harms, as well as advances the California state policy regarding data protection expressed in California statutes" such as the California Consumer Privacy Act and California Unfair Competition Law. *In Re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790, at \*7 (E.D. Va. Sept. 18, 2020) ("[T]he 'special relationship' exception applies; and the economic loss rule does not preclude Plaintiffs' tort claims under California law."); *see also Yahoo! II*, 313 F. Supp. 3d at 1132 (finding special relationship). Therefore, the economic loss doctrine does not apply and Marriott's motion to dismiss the negligence claim should thus be denied.

Further, the economic loss doctrine does not apply when a defendant breaches a legal duty independent of the contract, even when only economic loss ensues. *Robinson Helicopter*, 34 Cal.4th at 989; *Equifax*, 362 F. Supp. 3d at 1320. For this additional reason, the economic loss doctrine is inapplicable.

Finally, "[i]f there is no contractual relationship between a plaintiff and a defendant, then defendant cannot invoke the economic loss rule." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, No. CV143466MMMJPRX, 2015 WL 12746208, at \*11 (C.D. Cal. Oct. 30, 2015). If for some reason the Court finds that there is no valid contract between Plaintiffs and Marriott, then Marriott's contention that the economic loss doctrine precludes Plaintiffs' negligence claim fails.

## B.   Plaintiffs Have Sufficiently Alleged Valid Contract Claims.

### 1.   Plaintiffs Have Alleged a Valid Breach of Contract Claim.

Marriott's *motion* to dismiss Plaintiffs' express breach of contract claim must be denied. The court in *Marriott MDL*, examining strikingly similar allegations of breach of contract against *Marriott* under the same, or similar, *Marriott* privacy policy at issue here, also in the context of a *data breach*, rejected the same mutual assent argument Marriott advances in this case, explaining that Plaintiffs accepted to the offers of data privacy protection by staying at Marriott and Starwood properties, enrolling in their rewards programs, and providing their personal information to Marriott and Starwood. *Marriott MDL,* 440 F. Supp. 3d at 484; *see also Solara*, 2020 WL 2214152, at \*5 (denying dismissal

of contract claim in data breach case based on privacy notice and patient's bill of rights)

Here, too, Plaintiffs have alleged in great detail that they provided their personal information to Marriott in connection with making reservations to stay at a Marriott hotel or in connection with becoming a member of Marriott's loyalty program. [FAC, ¶14.] They did so in anticipation of receiving the protections of Marriott under its privacy policy, which in substance, assures consumers that their personal data will be protected and will only be shared with certain categories of persons. [FAC, ¶¶93-98.] By allowing Plaintiffs' personal information to be shared with persons who are not authorized to receive Plaintiffs' personal information as set out in Marriott's privacy policy, Marriott breached its contract with Plaintiffs and the putative class members. [FAC, ¶¶99, 102.]

Marriott, which proudly drapes itself in the flag of purportedly valuing its guests' privacy [*see, e.g.*, FAC, ¶15], now hypocritically contends that it never actually committed to protecting consumers' privacy, but instead only said it merely "seek[s]" to protect consumer's data and that its systems were never guaranteed to be secure. [Motion at 10:14-16.] The Court should not allow Marriott to escape liability so easily. These supposed ambiguities in its privacy policy squarely contradict Marriott's own specific assurances of data privacy and protection through its detailed promises concerning the limited universe of persons with whom Marriott would allow Plaintiffs' personal information to be shared. [FAC, ¶¶93-98.] In such cases, the specific provisions of a contract are controlling and, moreover, courts interpret any ambiguities against the drafter of the contract. *McNeely v. Claremont Mgmt. Co.*, 210 Cal. App. 2d 749, 753 (1962) ("[W]here a general and a particular provision of a written instrument are inconsistent, the particular controls the general."); *Fed. Nat'l Mortg. Assn. v. Bugna*, 57 Cal. App. 4th 529, 535 (1997) ("When ambiguities exist they are construed against the drafter of the instrument."); Cal. Civ. Code § 1654. Moreover, Marriott is not permitted to disclaim liability for its own negligence pursuant to a contractual provision. Cal. Civ. Code § 1668.

## 2. Plaintiffs Have Alleged a Valid Breach of Implied Contract Claim.

Marriott's asserted basis for seeking dismissal of Plaintiffs' claim for breach of

implied contract is also without merit.  Under California law, "an implied contract is an agreement, the existence and terms of which are manifested by conduct. . . ."  *Pacific Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (2017); *see also* Cal. Civ. Code § 1621.

As with the express contract claim, the court in the *Marriott MDL* case also denied Marriott's motion to dismiss the plaintiff's breach of implied contract claim in the context of a data breach.  Similar to this case, the plaintiff alleged that he "provided his Personal Information to Marriott in order to stay at a Marriott Property prior to the Data Breach [and] . . . also provided his passport information in order to stay at a Marriott Property."  *Marriott MDL*, 440 F. Supp. 3d at 486.  The court found "[t]hese alleged actions plausibly state a way for [the plaintiff] to manifest his assent to the privacy statements" and, thus, he sufficiently alleged breach of implied contract.  *Id.*; *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016) (the plaintiffs stated claim for breach of implied contract, explaining the "claim is a far more realistic reflection of the mutual agreement that occurs in most data-sharing transactions:  When a person hands over sensitive information, in addition to receiving a job, good, or service, they presumably expect to receive an implicit assurance that the information will be protected."); *see also Walters v. Kimpton Hotel & Rest. Grp., LLC*, No. 16-CV-05387-VC, 2017 WL 1398660, at *2 (N.D. Cal. Apr. 13, 2017) (implied contract may arise from privacy policy stating the defendant is "committed" to safeguarding customer privacy).[1]

---

[1] Courts in other jurisdictions have also denied motions to dismiss breach of implied contract claims in data breach cases.  *See Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011) (affirming district court's conclusion on motion to dismiss jury could reasonably find an implied contract that the defendant would not use or sell data and would take reasonable measures to protect the information); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *4 (M.D. Fla. Jan. 27, 2020) ("The majority of federal courts have held that the existence of an implied contract to safeguard customers' data could reasonably be found to exist between a merchant and customer when a customer uses a payment card to purchase goods and services."); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 821 (E.D. Ky. 2019); *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *11 (S.D.N.Y. May 7, 2019); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *17 (N.D. Ga. Mar. 5, 2018); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176 (D. Minn. 2014); *In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 528 (N.D. Ill. 2011).

Here, Plaintiffs allege they shared their Personal Information with Marriott for hotel reservation transactions and in connection with becoming members of Marriott's loyalty program. [FAC, ¶14.] They did so with the expectation that Marriott would safeguard their data. [FAC, ¶¶29, 108.] But Marriott breached this implied contract by allowing Plaintiffs' Personal Information to be accessed by unauthorized persons. [FAC, ¶¶36, 38-39, 110.] Plaintiffs, therefore, state a valid claim for breach of implied contract.

### C. Marriott's Motion to Dismiss Plaintiffs' UCL Claim Must Be Denied.

#### 1. Plaintiffs Have Statutory Standing Under the UCL.

Plaintiffs have statutory standing to pursue a claim for violation of the UCL. The UCL confers standing on "any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition"—i.e., "economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 321-22 (2011). "There are innumerable ways in which economic injury from unfair competition may be shown," including that Plaintiffs "have a present or future property interest diminished . . . be deprived of money or property to which he or she has a cognizable claim; or . . . be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 323.

Here, Plaintiffs allege they have suffered cognizable economic injury in many different ways, any one of which confers standing under the UCL. *First*, as explained above in section IV(A)(3), *supra,* Plaintiffs allege they did not receive the benefit of their bargain with Marriott. [FAC, ¶¶54, 56, 75, 103, 111.] Courts routinely find similar allegations in data breach cases are sufficient for statutory standing under the UCL. *Yahoo! II*, 313 F. Supp. 3d at 1130; *Marriott MDL*, 440 F. Supp. 3d at 492; *Solara*, 2020 WL 2214152, at *9; *LinkedIn,* 2014 WL 1323713, at *4.

*Second*, as also explained in section IV(A)(3), *supra*, the diminishment in value of Plaintiffs' personal information as a result of the breach of privacy [FAC, ¶¶54, 75, 128] are recoverable economic losses. *Anthem II*, 2016 WL 3029783, at *14-15 (finding that alleged damages to and diminution in value of PII entrusted to defendant constitutes economic injury under the UCL). Such losses also provide a valid basis for UCL standing.

*Third*, out-of-pocket expenses to mitigate the risk of identity theft also supplies a basis for standing under the UCL. *See Yahoo! I*, 2017 WL 3727318, at \*22 (out-of-pocket expenses provided basis for standing and collecting cases concluding same); *Adobe*, 66 F. Supp. 3d at 1216; *Anthem I*, 162 F. Supp. 3d at 986–87.

### 2. Plaintiffs Have Stated a Valid Claim for Violations of the UCL.

#### (a) Plaintiffs State Sufficient Facts Under the Unlawful Prong

"The unlawful prong of the UCL prohibits anything that can be properly called a business practice and that at the same time is forbidden by law." *Anthem I*, 162 F. Supp. 3d at 989. "Generally, violation of almost any law may serve as a basis for a UCL claim." *Id.* (quotation omitted). Here, Plaintiffs have alleged that Marriott violated section 5 of the FTC Act [FAC, ¶115], which is intended to prevent unfair and deceptive trade practices. *See* 15 U.S.C. § 45. It "is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data breach context." *Capital One*, 2020 WL 5629790, at \*17. "[P]laintiffs whose information was allegedly compromised by a data breach fit within the class of plaintiffs sought to be protected from the type of harm proscribed by [Section 5 of the FTC]." *Id.*[2]

#### (b) Plaintiffs State Sufficient Facts Under the Unfair Prong

Plaintiffs' allegations satisfy all three tests for what constitutes an "unfair" business practice under the UCL—i.e., the balancing, tethering, and FTC approach. In *Anthem I*, the defendants argued their failure to protect against a cyberattack that compromised the plaintiffs' data did not qualify as an "unfair" business practice. 162 F. Supp. 3d at 989-90. The district court disagreed, finding dismissal of the plaintiffs' claim "unwarranted."

---

[2] Moreover, Marriott is incorrect that California Civil Code sections 1798.81.5 and 1798.150 have no application here. Plaintiffs do allege their Personal Information, including payment card information, were held and stored by Marriott. [FAC, ¶14.] Moreover, Marriott itself has said that it cannot, at least not yet, rule out the possibility that credit card information, passport numbers, or driver's license information were improperly accessed. [FAC, ¶33.] It is objectively reasonable, at the pleading stage, to accept such information has been accessed—indeed, Marriott's action of offering credit monitoring to the customers whose data was breached indicates that a reasonable and prudent person would presume that such access to confidential information had been accomplished. These factual disputes cannot be resolved on a motion to dismiss.

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint

1   *Id.* at 990.  The court found that various California statutes "reflect 'California's public
2   policy of protecting customer data." *Id.* (quoting *Adobe*, 66 F. Supp. 3d at 1227).

3          Similarly, here, Marriott's failure to take adequate measures to protect Plaintiffs'
4   personal information, which resulted in the data breach at issue in this lawsuit, sufficiently
5   states a claim under the UCL's "unfair" prong.  Any argument that the "balancing test"
6   weighs in Marriott's favor presents a premature factual dispute.  *Anthem I*, 162 F. Supp.
7   3d at 990; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal 2012).

8                  **(c)     Plaintiffs State Sufficient Facts Under the Fraud Prong**

9          Plaintiffs' claim for violation of the "fraudulent" prong of the UCL, which requires
10  them to "show that members of the public are likely to be deceived." *Williams v. Gerber*
11  *Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted).  The allegations of the
12  FAC meet that standard.  Marriott misrepresented that it would protect the privacy and
13  confidentiality of Plaintiffs' Personal Information, including by implementing and
14  maintaining reasonable security measures. [FAC, ¶119(a).]. It did so by conveying to
15  customers it would only allow their data to be shared with specified categories of
16  authorized persons, and would "seek to use reasonable organizational, technical and
17  administrative measures to protect Personal Data."  [FAC, ¶¶19, 93-99.]. Marriott also
18  concealed the material fact that it did not adequately secure Plaintiffs' Personal
19  Information, and that it did not comply with common law and statutory duties pertaining
20  to the security and privacy of Plaintiffs' personal information.  [FAC, ¶119(b)-(c).]

21         Here, it is a question of fact as to whether members of the public would be deceived
22  by Marriott's representations and omissions.  Indeed, in the *Marriott MDL*, the court found
23  the complaint "contains extensive allegations that [Marriott] knew or should have known
24  about its allegedly inadequate data security practices and the risk of a data breach and that
25  its alleged failures and omissions were material and relied upon by consumers." *Marriott*
26  *MDL*, 440 F. Supp. 3d at 491.  The court found these allegations sufficient.  *Id.*

27         **D.     The Motion to Dismiss the Unjust Enrichment Claim Must Be Denied.**

28         The  Court  should  also  deny  Marriott's  motion  to  dismiss  Plaintiffs'  unjust

enrichment claim.  Although not made explicit in the FAC, the intent of Plaintiffs is to assert this claim in the alternative in the event the Court finds there is no contract relating to the protection of their Personal Information.  "A party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  This is also true in data breach cases.  *Facebook Consumer Privacy*, 402 F. Supp. 3d at 803 ("[P]laintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative.").  Because Marriott disputes the existence of an enforceable contract, assertion of an unjust enrichment claim is legally permissible.  If required by the Court, Plaintiffs may simply amend the FAC to clarify this claim is brought in the alternative.

Marriott is also incorrect on the substance of the claim.  Plaintiffs entrusted their Personal Information to Marriott with the reasonable expectation that it would keep their data secure from unauthorized persons.  [FAC, ¶29.]  Marriott has benefited from its ability to retain, use, and profit from that information, including by being able to sell the information and analyzing the data to enhance their marketing efforts.  [FAC, ¶¶26, 28, 98, 125.]  Marriott's retention of these benefits, while failing to keep Plaintiffs' Personal Information secure, would be unjust and inequitable.  These allegations, as set forth in greater detail in the FAC, state a claim for unjust enrichment.  *See Facebook Consumer Privacy*, 402 F. Supp. 3d at 803 (even if they suffered no economic loss from unauthorized disclosure of their data, the plaintiffs "may proceed . . . on a claim for unjust enrichment to recover the gains that Facebook realized from its allegedly improper conduct."); *Solara*, 2020 WL 2214152, at *6 (denying motion to dismiss unjust enrichment claim).[3] Marriott's arguments to the contrary, such as its purported disclaimers, are factual matters that go to weight, not the legal validity of Plaintiffs' claim on a motion to dismiss.

### E.    Marriott's Motion to Dismiss the CCPA Claim Should Be Denied.

Marriott's motion to dismiss Plaintiffs' CCPA claim should also be denied because

---

[3] Numerous courts outside of California have also permitted unjust enrichment claims in data breach cases. *See, e.g., Rudolph*, 2019 WL 2023713, at *12 ("Courts have concluded that the failure to secure a plaintiff's data can give rise to an unjust enrichment claim."); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1200–01 (D. Or. Aug. 1, 2016); *In re: Cmty. Health Sys. Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *24 (N.D. Ala. Sep. 12, 2016); *Target Data Breach*, 66 F. Supp. 3d at 1178.

Marriott's arguments are all premature factual disputes.  Marriott, citing to its own announcement of the data breach, contends none of the information covered by Civil Code section 1798.81.5(d)(1)(A) was disclosed to unauthorized persons (e.g., payment card information, driver's license numbers, social security numbers).  But such a factual claim cannot be tested on a motion to dismiss, particularly where Marriott admits its investigation is "ongoing."  [FAC, ¶33.]  The possibility, therefore, that such information belonging to Plaintiffs has been compromised, cannot be ruled out.  [*Id.*]

In addition, proper notice was provided under the CCPA.  Marriott misinterprets the notice provision of the CCPA by only partially quoting the relevant provision of the statute.  Consumers need only wait for the 30-day period to pass prior to initiating "any action . . . *for statutory damages*"—not "prior to any action [full stop,]" as Marriott contends.  Cal. Civ. Code § 1798.150(b) (emphasis added).  Plaintiff Rahman did not bring his CCPA claim for statutory damages until filing the FAC, well after the 30-day period had expired.  [Dkt. 1, ¶77.][4]

Finally, because the CCPA permits pre-suit notice for statutory damages on a "class-wide basis," Plaintiff Rahman's notice, brought "on behalf of the Class" (which of course covers the other named Plaintiffs) was sufficient.  [FAC, ¶89.]  Thus, requiring separate notice from the other Plaintiffs, as Marriott urges, is not required under the statute.

## VI.   CONCLUSION

Plaintiffs respectfully request that Marriott's motion be denied. If, however, the Court is inclined to grant the motion in any respect, Plaintiffs request leave to amend to cure any perceived defect.  Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

---

[4] Further, that "action" does not refer to a "lawsuit" or "complaint" is also evidenced by the same word used later in the subdivision by the Legislature to describe a cause of action or claim under the CCPA, where it states that "No notice shall be required prior to an individual consumer initiating an *action* solely for actual pecuniary damages suffered as a result of the alleged violations of this title."  Cal. Civ. Code § 1798.150(b).  This is also similar to how the word "action" is interpreted in the notice provision of the Consumer Legal Remedies Act (CLRA), where notably, a plaintiff is not required to wait until the 30 day period is up before filing other causes of action or even before filing a CLRA claim seeking an injunction.  *See* Cal. Civ. Code §.1782(a)-(b), (d).

Dated: October 23, 2020                    AI LAW, PLC

                                           /s/ Ahmed Ibrahim
                                           Ahmed Ibrahim, Esq.

                                           *Attorneys for Plaintiffs Individually and*
                                           *On Behalf of All Others Similarly Situated*

Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint